# CEASE AND DESIST

### Nemo me impune lacessit.                    21-cv-1675

| | |
|---|---|
| **PRIVATE**<br>**THIS IS NOT A PUBLIC**<br>**COMMUNICATION**<br>**Notice to agent is Notice to principle**<br>**Notice to principle is Notice to Agent**<br>**Applications to all successors and**<br>**assigns** | **From:** Jeanell-Jackson:<br>Always retaining all rights.<br>Care of postal service address:<br>2929 Peach Street Apt 106<br>Shreveport, Louisiana union state<br>USA without USDC<br>Zip exempt, but near [71107] |

### TO:

| | |
|---|---|
| **To :** Eugene William Bryson<br>501 Texas St<br>Shreveport, Louisiana 71101 | **To:** James E. Stewart<br>501 Texas St.<br>Shreveport, Louisiana  71101 |

**Attachments:**

   1) Birth certificate.

**It is a fact that:** I am a natural born State Citizen of Louisiana, in its  constitutional capacity, as one of the several states of the Union. And I am an inhabitant thereof. **It is a fact that:** That my birth certificate is proof that I am a State Citizens. See attached birth  certificate.
**It is a fact that:** That I am not a United States citizen, resident, person, individual or any other legal fiction, nor have I ever been.
**It is a fact that:** I explicitly reserve all of my rights always and forevermore. **It is a fact that:** That the United States, with intent and great deception, uses the term "United  States citizen", to deprive the people of their rights, their birth rights, their property and freedom.  And further, to relegate the status of the people, to that of livestock.

I owe you nothing nor do you have any jurisdiction over me. Your constant unceasing letters from you and your satellite departments that harass, threatens, attempts at coercion, scare tactics, stalking and all other actions are depriving me of our right to tranquility guaranteed by the preamble of, and the rest of the constitution for the United States of America. You are violating the RICO laws, stocking laws, mail fraud laws, depriving rights under color of law as well as the common law and the constitution. Your actions are also acts of treason and tyranny.

### I ORDER YOU TO CEASE AND DESIST ALL ACTIVITIES AGAINST ME!

**Jeanell-Latrice: Jackson**

Nineteen day of May 19th in the year of our Lord 2021

By: *[signature]*

Ted Coy, Eugene Bryson, James Stewart

To: ~~TED COX~~ Date: May 18, 2021 *(19 written above date)*

# !Warning Ignorance of the Law is Not An Excuse!

# !Notice Violation Of Rights Under Color Of Law!

Federal law provides that it is a crime to violate the Rights of a citizen under the color-of-law. You can be arrested for this crime and you can also be held personally liable for civil damages.

Attempting to cause a person to do something by telling that person that such action is required by law, when it is not required by law, may be a felony. 18 USC §242 provides that whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any person in any State, Territory, Commonwealth, Possession, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States ... shall be fined under this title or imprisoned not more than one year, or both. 18 USC §245 provided that Whoever, whether or not acting under color of law, intimidates or interferes with any person from participating in or enjoying any benefit, service, privilege, program, facility, or activity provided or administered by the United States; [or] applying for or enjoying employment, or any perquisite thereof, by any agency of the United States; shall be fined under this title, or imprisoned not more than one year, or both.

42 USC §1983 provides that every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. Warning, you may be in violation of Federal Law and persisting with your demand may lead to your arrest and/or civil damages! Also understand that the law provides that you can be held personally responsible and liable, as well as your company or agency. You are advised to cease and desist with your demand and to seek personal legal counsel if you do not understand the law.

!Notice! i, :JEANELL-LATRICE: family of Jackson: am a living, breathing, flesh and blood human being, daughter of the Most High God, with God given unalienable rights retained and none waived, and a state Citizen of the state of New York in its dejure capacity under the Constitution for the united States of America (UN incorporated!), a traveler upon the land by any means desired in a non-commercial capacity, are hereby informing you that if you choose to proceed with your actions you are hereby creating a adhesion contract and agree to pay me the sum of two hundred fifty thousand dollars (dollars defined as four hundred sixteen grains of standard silver per dollar) per violation of my rights or per fifteen minutes or whichever i choose. -

Without Prejudice In Accordance with UCC 1-308 :JEANELL-LATRICE: family of Jackson:

Notice To: Ted Cox, Eugene Bryson, James Stewart

Case Number 160531 and 160531a    Jeanell L. Jackson

Date: May 19, 2021

PETITIONER/CLAIMANT:
, a living wo/man

vs

RESPONDENT:
TED COX
C/o CADDO JUVENILE COURT
1835 Spring St
Shreveport, Louisiana 71101

Case Number 160531 and 160531a

**Motion for Termination of Guardianship for Lack of Personal and Subject Matter Jurisdiction Declaration of Truth for the Record**

Notice to Principal is Notice to Agent. Notice to Agent is Notice to Principal.

1. Notice of liability is the first essential element of due process of law. This notice on the record is to you, the private, living, non-fictional wo/man, Fake a Judge. I am a peaceful wo/man, and I expect and am entitled to honest service by you as a willful wo/man and public trustee acting as judge.

2. The NAME "JEANELL LATRICE JACKSON" ("NAME", this paragraph) and the name "Jeanell Latrice Jackson" are in truth and reality not the same "person", and one is not the "name" of the other. I am not this NAME, I do not own this NAME, and I am not a registered agent or authorized representative for this NAME. This NAME is not my name.

3. The NAME "JO'MARIEA CORTEZ JAKSON," ("NAME", this paragraph) and the name "Jo'Mariea Cortez Jackson Jackson" are in truth and reality not the same "person", and one is not the "name" of the other. My son is not this NAME, he does not own this NAME, I do not own this NAME, and neither I nor my son are registered agents or authorized representatives for this NAME. This NAME is not my son's name.

4. The NAME "ART'TRELLE G-MON JACKSON," ("NAME", this paragraph) and the name "Art'Trelle G-Mon Jackson" are in truth and reality not the same "person", and one is not the "name" of the other. My son is not this NAME, he does not own this NAME, I do not own this NAME, and neither I nor my son are registered agents or authorized representatives for this NAME. This NAME is not my son's name.

5. The NAME "BRAYLEN CHARLES JACKSON," ("NAME", this paragraph) and the name "Braylen Charles Jackson" are in truth and reality not the same "person", and one is not the "name" of the other. My son is not this NAME, he does not own this NAME, I do not own this NAME, and neither I nor my son are registered agents or authorized representatives for this NAME. This NAME is not my son's name.

6. The NAME "MA'RIAH FRANCES JEAN JACKSON," ("NAME", this paragraph) and the name "Ma'Riah Frances Jean Jackson" are in truth and reality not the same "person", and one is not the "name" of the other. My son is not this NAME, he does not own this NAME, I do not own this NAME, and neither I nor my son are registered agents or authorized representatives for this NAME. This NAME is not my daughter's name.

7. The NAME "MARKYA LATRICE JACKSON," ("NAME", this paragraph) and the name "Markya Latrice Jackson" are in truth and reality not the same "person", and one is not the "name" of the other. My son is not this NAME, he does not own this NAME, I do not own this NAME, and neither I nor my son are registered agents or authorized representatives for this NAME. This NAME is not my daughter's name.

8. The NAME "JAY'WONN MARQUIS JACKSON," ("NAME", this paragraph) and the name "Jay'wonn Marquis Jackson" are in truth and reality not the same "person", and one is not the "name" of the other. My son is not this NAME, he does not own this NAME, I do not own this NAME, and neither I nor my son are registered agents or authorized representatives for this NAME. This NAME is not my son's name.

Your private "court" has no authority to grant any powers to me that God didn't already give me:

> "But as many as received him, to them gave he power to become the sons of God, even to them that believe on his name:" John 1:12 KJV

9. The public, corporate, legal process has been a heavy burden to my private life. I therefore reject the office of guardianship and all of its restrictive requirements on the grounds that a life provided by and through obedience to God is burden-free.

10. With his biological father's approval, you are hereby commanded to terminate guardianship for FIRST MIDDLE LAST and remove the NAMES "FIRST MIDDLE LAST" and "FIRST MIDDLE LAST" from your physical and electronic filing systems and never use them again to communicate with either of us, or for any financial gain.

1

Case Number 160531 and 160531a JEANELL LATRICE JACKSON

11. Amendment XIII of the US Constitution and Article II Section 21 of the Colorado Constitution both guarantee that "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." If any destruction or harassment of any nature should fall upon me, my family, or my friends by your hand or voice, I will follow due process of law to have you removed for conduct unbecoming a public trustee of The People.

12. Should you have a contradictory viewpoint to this letter, or believe in any way that I am in the wrong, you must provide the following before communicating with me or my sons and daughters in any way: a. A certified copy of your oath or a sworn affidavit that you took this oath to protect all of my God-given rights and freedoms
   b. A copy of your license to practice law
   c. A copy of your BAR membership card
   d. A copy of both of your Dun & Bradstreet bonds, if active

   e. The exact spelling of the name of your court (see enclosed copy of confusing and
      misleading court paperwork headers)
   f. Evidence of fraudulent or unlawful intent within my heart
   g. Evidence that I am legally obligated to the NAMES "FIRST MIDDLE LAST" or "FIRST
      MIDDLE LAST"

      h. Evidence that my sons and daughters are legally obligated to the NAME "FIRST MIDDLE
      LAST" Evidence that my sons and daughters and I are parties to signed contracts in which
      we both received full disclosure of the nature of the NAMES mentioned herein

Should you wish to reply peacefully, please mail the envelope as follows?

Jeanell Latrice Jackson
c/o 2929 Peach St. Apt 106
Without [Shreveport, Louisiana 71107]

Communication addressed any other way will be refused for mistaken identity and considered a
fraudulent attempt to keep me and my sons and daughters in bondage to fictitious NAMES that don't
belong to us. If a lawful written reply is not received by me within 72 Hours, I will consider this matter
permanently closed and thank you graciously for your tacit agreement to the terms of this
motion. Should you need additional time to respond, you may send a written request for additional
time, mailed in the same manner, additional time not to exceed seventy two hours) after receipt of this
motion.

As silence is acquiescence under the law, silence can only be equated with fraud where there is a
lawful or moral duty to speak, or where an inquiry left unanswered would be misleading, whether
intentionally or not.

All Rights Retained and Reserved Without Prejudice

Most sincerely in the name of Jesus Christ

Cc: TED COX
    EUGENE WILLIAM BRYSON
    JAMES E. STEWART

2

Case 5:21-cv-01675-DEW-MLH    Document 1-3    Filed 06/14/21    Page 7 of 19 PageID #:  14

scribed in section 482(a)(2) of the Social Security Act [section 682(a)(2) of this title]."

### CONSTRUCTION OF 2008 AMENDMENT

Pub. L. 110–351, title III, § 301(d), Oct. 7, 2008, 122 Stat. 3970, provided that: "Nothing in the amendments made by this section [enacting section 679c of this title and amending this section and sections 672, 674, and 677 of this title] shall be construed as—

"(1) authorization to terminate funding on behalf of any Indian child receiving foster care maintenance payments or adoption assistance payments on the date of enactment of this Act [Oct. 7, 2008] and for which the State receives Federal matching payments under paragraph (1) or (2) of section 474(a) of the Social Security Act (42 U.S.C. 674(a)), regardless of whether a cooperative agreement or contract between the State and an Indian tribe, tribal organization, or tribal consortium is in effect on such date or an Indian tribe, tribal organization, or tribal consortium elects subsequent to such date to operate a program under section 479B of such Act [42 U.S.C. 679c] (as added by subsection (a) of this section); or

"(2) affecting the responsibility of a State—

"(A) as part of the plan approved under section 471 of the Social Security Act (42 U.S.C. 671), to provide foster care maintenance payments, adoption assistance payments, and if the State elects, kinship guardianship assistance payments, for Indian children who are eligible for such payments and who are not otherwise being served by an Indian tribe, tribal organization, or tribal consortium pursuant to a program under such section 479B of such Act or a cooperative agreement or contract entered into between an Indian tribe, a tribal organization, or a tribal consortium and a State for the administration or payment of funds under part E of title IV of such Act [this part]; or

"(B) as part of the plan approved under section 477 of such Act (42 U.S.C. 677) to administer, supervise, or oversee programs carried out under that plan on behalf of Indian children who are eligible for such programs if such children are not otherwise being served by an Indian tribe, tribal organization, or tribal consortium pursuant to an approved plan under section 477(j) of such Act [42 U.S.C. 677(j)] or a cooperative agreement or contract entered into under section 477(b)(3)(G) of such Act [42 U.S.C. 677(b)(3)(G)]."

### NO FEDERAL FUNDING TO UNLAWFULLY PRESENT INDIVIDUALS

Pub. L. 110–351, title V, § 503, Oct. 7, 2008, 122 Stat. 3981, provided that: "Nothing in this Act [see Short Title of 2008 Amendment note set out under section 1305 of this title] shall be construed to alter prohibitions on Federal payments to individuals who are unlawfully present in the United States."

### PRESERVATION OF REASONABLE PARENTING

Section 401 of Pub. L. 105–89 provided that: "Nothing in this Act [see Short Title of 1997 Amendment note set out under section 1305 of this title] is intended to disrupt the family unnecessarily or to intrude inappropriately into family life, to prohibit the use of reasonable methods of parental discipline, or to prescribe a particular method of parenting."

### REPORTING REQUIREMENTS

Section 402 of Pub. L. 105–89 provided that: "Any information required to be reported under this Act [see Short Title of 1997 Amendment note set out under section 1305 of this title] shall be supplied to the Secretary of Health and Human Services through data meeting the requirements of the Adoption and Foster Care Analysis and Reporting System established pursuant to section 479 of the Social Security Act (42 U.S.C. 679), to the extent such data is available under that system. The Secretary shall make such modifications to regula-

tions issued under section 479 of such Act with respect to the Adoption and Foster Care Analysis and Reporting System as may be necessary to allow States to obtain data that meets the requirements of such system in order to satisfy the reporting requirements of this Act."

### PURCHASE OF AMERICAN-MADE EQUIPMENT AND PRODUCTS

Section 406 of Pub. L. 105–89 provided that:

"(a) IN GENERAL.—It is the sense of the Congress that, to the greatest extent practicable, all equipment and products purchased with funds made available under this Act [see Short Title of 1997 Amendment note set out under section 1305 of this title] should be American-made.

"(b) NOTICE REQUIREMENT.—In providing financial assistance to, or entering into any contract with, any entity using funds made available under this Act, the head of each Federal agency, to the greatest extent practicable, shall provide to such entity a notice describing the statement made in subsection (a) by the Congress."

## § 672. Foster care maintenance payments program

### (a) In general

#### (1) Eligibility

Each State with a plan approved under this part shall make foster care maintenance payments on behalf of each child who has been removed from the home of a relative specified in section 606(a) of this title (as in effect on July 16, 1996) into foster care if—

(A) the removal and foster care placement met, and the placement continues to meet, the requirements of paragraph (2); and

(B) the child, while in the home, would have met the AFDC eligibility requirement of paragraph (3).

#### (2) Removal and foster care placement requirements

The removal and foster care placement of a child meet the requirements of this paragraph if—

(A) the removal and foster care placement are in accordance with—

(i) a voluntary placement agreement entered into by a parent or legal guardian of the child who is the relative referred to in paragraph (1); or

(ii) a judicial determination to the effect that continuation in the home from which removed would be contrary to the welfare of the child and that reasonable efforts of the type described in section 671(a)(15) of this title for a child have been made;

(B) the child's placement and care are the responsibility of—

(i) the State agency administering the State plan approved under section 671 of this title;

(ii) any other public agency with which the State agency administering or supervising the administration of the State plan has made an agreement which is in effect; or

(iii) an Indian tribe or a tribal organization (as defined in section 679c(a) of this title) or a tribal consortium that has a plan approved under section 671 of this

the parents or guardians of the minor have requested the assistance of the agency and signed a voluntary placement agreement; and (2) the term "voluntary placement agreement" means a written agreement, binding on the parties to the agreement, between the State agency, any other agency acting on its behalf, and the parents or guardians of a minor child which specifies, at a minimum, the legal status of the child and the rights and obligations of the parents or guardians, the child, and the agency while the child is in placement.

**(g) Revocation of voluntary placement agreement**

In any case where—

(1) the placement of a minor child in foster care occurred pursuant to a voluntary placement agreement entered into by the parents or guardians of such child as provided in subsection (a) of this section, and

(2) such parents or guardians request (in such manner and form as the Secretary may prescribe) that the child be returned to their home or to the home of a relative,

the voluntary placement agreement shall be deemed to be revoked unless the State agency opposes such request and obtains a judicial determination, by a court of competent jurisdiction, that the return of the child to such home would be contrary to the child's best interests.

**(h) Aid for dependent children; assistance for minor children in needy families**

(1) For purposes of subchapter XIX of this chapter, any child with respect to whom foster care maintenance payments are made under this section is deemed to be a dependent child as defined in section 606 of this title (as in effect as of July 16, 1996) and deemed to be a recipient of aid to families with dependent children under part A of this subchapter (as so in effect). For purposes of division A [1] of subchapter XX of this chapter, any child with respect to whom foster care maintenance payments are made under this section is deemed to be a minor child in a needy family under a State program funded under part A of this subchapter and is deemed to be a recipient of assistance under such part.

(2) For purposes of paragraph (1), a child whose costs in a foster family home or child care institution are covered by the foster care maintenance payments being made with respect to the child's minor parent, as provided in section 675(4)(B) of this title, shall be considered a child with respect to whom foster care maintenance payments are made under this section.

**(i) Administrative costs associated with otherwise eligible children not in licensed foster care settings**

Expenditures by a State that would be considered administrative expenditures for purposes of section 674(a)(3) of this title if made with respect to a child who was residing in a foster family home or child-care institution shall be so considered with respect to a child not residing in such a home or institution—

(1) in the case of a child who has been removed in accordance with subsection (a) of

this section from the home of a relative specified in section 606(a) of this title (as in effect on July 16, 1996), only for expenditures—

(A) with respect to a period of not more than the lesser of 12 months or the average length of time it takes for the State to license or approve a home as a foster home, in which the child is in the home of a relative and an application is pending for licensing or approval of the home as a foster family home; or

(B) with respect to a period of not more than 1 calendar month when a child moves from a facility not eligible for payments under this part into a foster family home or child care institution licensed or approved by the State; and

(2) in the case of any other child who is potentially eligible for benefits under a State plan approved under this part and at imminent risk of removal from the home, only if—

(A) reasonable efforts are being made in accordance with section 671(a)(15) of this title to prevent the need for, or if necessary to pursue, removal of the child from the home; and

(B) the State agency has made, not less often than every 6 months, a determination (or redetermination) as to whether the child remains at imminent risk of removal from the home.

(Aug. 14, 1935, ch. 531, title IV, § 472, as added and amended Pub. L. 96–272, title I, §§ 101(a)(1), 102(a)(1), (2), June 17, 1980, 94 Stat. 503, 513, 514; Pub. L. 99–603, title II, § 201(b)(2)(A), title III, §§ 302(b)(2), 303(e)(2), Nov. 6, 1986, 100 Stat. 3403, 3422, 3431; Pub. L. 100–203, title IX, §§ 9133(b)(2), 9139(a), Dec. 22, 1987, 101 Stat. 1330–314, 1330–321; Pub. L. 103–432, title II, § 202(d)(3), Oct. 31, 1994, 108 Stat. 4454; Pub. L. 104–193, title I, § 108(d)(3), (4), title V, § 501, Aug. 22, 1996, 110 Stat. 2166, 2277; Pub. L. 105–33, title V, §§ 5513(b)(1), (2), 5592(b), Aug. 5, 1997, 111 Stat. 620, 644; Pub. L. 105–89, title I, § 101(c), Nov. 19, 1997, 111 Stat. 2117; Pub. L. 106–169, title I, § 111, Dec. 14, 1999, 113 Stat. 1829; Pub. L. 109–113, § 2, Nov. 22, 2005, 119 Stat. 2371; Pub. L. 109–171, title VII, §§ 7403(a), 7404(a), Feb. 8, 2006, 120 Stat. 151; Pub. L. 109–288, § 6(f)(6), Sept. 28, 2006, 120 Stat. 1247; Pub. L. 110–351, title II, § 201(b), title III, § 301(a)(2), Oct. 7, 2008, 122 Stat. 3958, 3967; Pub. L. 111–148, title VI, § 6703(d)(2)(B), Mar. 23, 2010, 124 Stat. 803.)

REFERENCES IN TEXT

The Personal Responsibility and Work Opportunity Reconciliation Act of 1996, referred to in subsec. (a)(4), is Pub. L. 104–193, Aug. 22, 1996, 110 Stat. 2105. Title IV of the Act is classified principally to chapter 14 (§ 1601 et seq.) of Title 8, Aliens and Nationality. For complete classification of title IV to the Code, see Tables.

Parts A and B of this subchapter, referred to in subsecs. (f) and (h), are classified to sections 601 et seq. and 620 et seq., respectively, of this title.

Division A of subchapter XX, referred to in subsec. (h)(1), was in the original a reference to subtitle 1 of title XX, which was translated as if referring to subtitle A of title XX of the Social Security Act, to reflect the probable intent of Congress. Title XX of the Act, enacting subchapter XX of this chapter, does not contain a subtitle 1.

AMENDMENTS

2010—Subsec. (h)(1). Pub. L. 111–148 inserted "division A of" before "subchapter XX".

---

[1] See References in Text note below.

2008—Subsec. (a)(2)(B)(iii). Pub. L. 110–351, §301(a)(2), added cl. (iii).

Subsec. (c)(2). Pub. L. 110–351, §201(b), inserted "except, in the case of a child who has attained 18 years of age, the term shall include a supervised setting in which the individual is living independently, in accordance with such conditions as the Secretary shall establish in regulations," before "but the term".

2006—Subsec. (a). Pub. L. 109–171, §7404(a), amended subsec. (a) generally. Prior to amendment, subsec. (a) related to qualifying children for foster care maintenance payments.

Subsec. (d). Pub. L. 109–288 substituted "622(b)(8)" for "622(b)(10)".

Subsec. (i). Pub. L. 109–171, §7403(a), added subsec. (i).

2005—Subsec. (b). Pub. L. 109–113 struck out "nonprofit" before "private" in pars. (1) and (2).

1999—Subsec. (a). Pub. L. 106–169 inserted at end "In determining whether a child would have received aid under a State plan approved under section 602 of this title (as in effect on July 16, 1996), a child whose resources (determined pursuant to section 602(a)(7)(B) of this title, as so in effect) have a combined value of not more than $10,000 shall be considered to be a child whose resources have a combined value of not more than $1,000 (or such lower amount as the State may determine for purposes of such section 602(a)(7)(B) of this title)."

1997—Subsec. (a). Pub. L. 105–33, §5513(b)(1), substituted "July 16, 1996" for "June 1, 1995" in introductory provisions.

Subsec. (a)(1). Pub. L. 105–89 inserted "for a child" before "have been made;".

Subsec. (a)(4). Pub. L. 105–33, §5513(b)(1), substituted "July 16, 1996" for "June 1, 1995" in subpars. (A) and (B).

Subsec. (d). Pub. L. 105–33, §5592(b), substituted "section 622(b)(10)" for "section 622(b)(9)".

Subsec. (h)(1). Pub. L. 105–33, §5513(b)(2), substituted "July 16, 1996" for "June 1, 1995".

1996—Subsec. (a). Pub. L. 104–193, §108(d)(3)(A), in introductory provisions, substituted "would have met the requirements" for "would meet the requirements" and inserted "(as such sections were in effect on June 1, 1995)" after "section 607 of this title" and "(as so in effect)" after "section 606(a) of this title".

Subsec. (a)(4)(A). Pub. L. 104–193, §108(d)(3)(B)(i), substituted "would have received aid" for "received aid" and inserted "(as in effect on June 1, 1995)" after "section 602 of this title".

Subsec. (a)(4)(B)(ii). Pub. L. 104–193, §108(d)(3)(B)(ii), inserted "(as in effect on June 1, 1995)" after "section 606(a) of this title".

Subsec. (c)(2). Pub. L. 104–193, §501, struck out "nonprofit" before "private child-care institution."

Subsec. (h). Pub. L. 104–193, §108(d)(4), amended subsec. (h) generally. Prior to amendment, subsec. (h) read as follows: "For purposes of subchapters XIX and XX of this chapter, any child with respect to whom foster care maintenance payments are made under this section shall be deemed to be a dependent child as defined in section 606 of this title and shall be deemed to be a recipient of aid to families with dependent children under part A of this subchapter. For purposes of the preceding sentence, a child whose costs in a foster family home or child-care institution are covered by the foster care maintenance payments being made with respect to his or her minor parent, as provided in section 675(4)(B) of this title, shall be considered a child with respect to whom foster care maintenance payments are made under this section."

1994—Subsec. (d). Pub. L. 103–432 substituted "section 622(b)(9) of this title" for "section 627(b) of this title".

1987—Subsec. (a). Pub. L. 100–203, §9139(a), substituted "section 673(a)(2)(B) of this title" for "section 673(a)(1)(B) of this title".

Subsec. (h). Pub. L. 100–203, §9133(b)(2), inserted sentence at end.

1986—Subsec. (a). Pub. L. 99–603, §303(e)(2), inserted in closing provisions reference to cases in which a child is an alien disqualified under section 1161(d)(7) of title 8.

Pub. L. 99–603, §302(b)(2), inserted in closing provisions reference to cases in which a child is an alien disqualified under section 1160(f) of title 8.

Pub. L. 99–603, §201(b)(2)(A), inserted closing provisions: "In any case where the child is an alien disqualified under section 1255a(h) of title 8 from receiving aid under the State plan approved under section 602 of this title in or for the month in which such agreement was entered into or court proceedings leading to the removal of the child from the home were instituted, such child shall be considered to satisfy the requirements of paragraph (4) (and the corresponding requirements of section 673(a)(1)(B) of this title), with respect to that month, if he or she would have satisfied such requirements but for such disqualification."

1980—Subsec. (a). Pub. L. 96–272, §102(a)(1), inserted provisions relating to voluntary placement agreements entered into by a child's parent or legal guardian.

Subsecs. (d) to (h). Pub. L. 96–272, §102(a)(2), added subsecs. (d) to (g). Former subsec. (d) was redesignated (h).

#### EFFECTIVE DATE OF 2008 AMENDMENT

Pub. L. 110–351, title II, §201(d), Oct. 7, 2008, 122 Stat. 3959, provided that: "The amendments made by this section [amending this section and sections 673 and 675 of this title] shall take effect on October 1, 2010."

Amendment by section 301(a)(2) of Pub. L. 110–351 effective Oct. 1, 2009, without regard to whether implementing regulations have been promulgated, see section 301(f) of Pub. L. 110–351, set out as a note under section 671 of this title.

Amendment by Pub. L. 110–351 effective Oct. 7, 2008, except as otherwise provided, and applicable to payments under this part and part B of this subchapter for quarters beginning on or after effective date of amendment, with delay permitted if State legislation is required to meet additional requirements, see section 601 of Pub. L. 110–351, set out as a note under section 671 of this title.

#### EFFECTIVE DATE OF 2006 AMENDMENT

Amendment by Pub. L. 109–288 effective Oct. 1, 2006, and applicable to payments under this part and part B of this subchapter for calendar quarters beginning on or after such date, without regard to whether implementing regulations have been promulgated, and with delay permitted if State legislation is required to meet additional requirements, see section 12(a), (b) of Pub. L. 109–288, set out as a note under section 621 of this title.

Amendment by Pub. L. 109–171 effective as if enacted on Oct. 1, 2005, except as otherwise provided, see section 7701 of Pub. L. 109–171, set out as a note under section 603 of this title.

#### EFFECTIVE DATE OF 1997 AMENDMENTS

Amendment by Pub. L. 105–89 effective Nov. 19, 1997, except as otherwise provided, with delay permitted if State legislation is required, see section 501 of Pub. L. 105–89, set out as a note under section 622 of this title.

Amendment by section 5513(b)(1), (2) of Pub. L. 105–33 effective as if included in section 108 of the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, Pub. L. 104–193, at the time such section 108 became law, see section 5518(b) of Pub. L. 105–33, set out as a note under section 652 of this title.

Amendment by section 5592(b) of Pub. L. 105–33 effective as if included in the enactment of title V of the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, Pub. L. 104–193, see section 5593 of Pub. L. 105–33, set out as a note under section 622 of this title.

#### EFFECTIVE DATE OF 1996 AMENDMENT

Amendment by section 108(d)(3), (4) of Pub. L. 104–193 effective July 1, 1997, with transition rules relating to State options to accelerate such date, rules relating to claims, actions, and proceedings commenced before such date, rules relating to closing out of accounts for

title in accordance with section 679c of this title; and

(C) the child has been placed in a foster family home or child-care institution.

### (3) AFDC eligibility requirement

#### (A) In general

A child in the home referred to in paragraph (1) would have met the AFDC eligibility requirement of this paragraph if the child—

(i) would have received aid under the State plan approved under section 602 of this title (as in effect on July 16, 1996) in the home, in or for the month in which the agreement was entered into or court proceedings leading to the determination referred to in paragraph (2)(A)(ii) of this subsection were initiated; or

(ii)(I) would have received the aid in the home, in or for the month referred to in clause (i), if application had been made therefor; or

(II) had been living in the home within 6 months before the month in which the agreement was entered into or the proceedings were initiated, and would have received the aid in or for such month, if, in such month, the child had been living in the home with the relative referred to in paragraph (1) and application for the aid had been made.

#### (B) Resources determination

For purposes of subparagraph (A), in determining whether a child would have received aid under a State plan approved under section 602 of this title (as in effect on July 16, 1996), a child whose resources (determined pursuant to section 602(a)(7)(B) of this title, as so in effect) have a combined value of not more than $10,000 shall be considered a child whose resources have a combined value of not more than $1,000 (or such lower amount as the State may determine for purposes of section 602(a)(7)(B) of this title).

### (4) Eligibility of certain alien children

Subject to title IV of the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 [8 U.S.C. 1601 et seq.], if the child is an alien disqualified under section 1255a(h) or 1160(f) of title 8 from receiving aid under the State plan approved under section 602 of this title in or for the month in which the agreement described in paragraph (2)(A)(i) was entered into or court proceedings leading to the determination described in paragraph (2)(A)(ii) were initiated, the child shall be considered to satisfy the requirements of paragraph (3), with respect to the month, if the child would have satisfied the requirements but for the disqualification.

### (b) Additional qualifications

Foster care maintenance payments may be made under this part only on behalf of a child described in subsection (a) of this section who is—

(1) in the foster family home of an individual, whether the payments therefor are made to such individual or to a public or private child-placement or child-care agency, or

(2) in a child-care institution, whether the payments therefor are made to such institution or to a public or private child-placement or child-care agency, which payments shall be limited so as to include in such payments only those items which are included in the term "foster care maintenance payments" (as defined in section 675(4) of this title).

### (c) "Foster family home" and "child-care institution" defined

For the purposes of this part, the term "foster family home" means a foster family home for children which is licensed by the State in which it is situated or has been approved, by the agency of such State having responsibility for licensing homes of this type, as meeting the standards established for such licensing; and (2) the term "child-care institution" means a private child-care institution, or a public child-care institution which accommodates no more than twenty-five children, which is licensed by the State in which it is situated or has been approved, by the agency of such State responsible for licensing or approval of institutions of this type, as meeting the standards established for such licensing, except, in the case of a child who has attained 18 years of age, the term shall include a supervised setting in which the individual is living independently, in accordance with such conditions as the Secretary shall establish in regulations, but the term shall not include detention facilities, forestry camps, training schools, or any other facility operated primarily for the detention of children who are determined to be delinquent.

### (d) Children removed from their homes pursuant to voluntary placement agreements

Notwithstanding any other provision of this subchapter, Federal payments may be made under this part with respect to amounts expended by any State as foster care maintenance payments under this section, in the case of children removed from their homes pursuant to voluntary placement agreements as described in subsection (a) of this section, only if (at the time such amounts were expended) the State has fulfilled all of the requirements of section 622(b)(8) of this title.

### (e) Placements in best interest of child

No Federal payment may be made under this part with respect to amounts expended by any State as foster care maintenance payments under this section, in the case of any child who was removed from his or her home pursuant to a voluntary placement agreement as described in subsection (a) of this section and has remained in voluntary placement for a period in excess of 180 days, unless there has been a judicial determination by a court of competent jurisdiction (within the first 180 days of such placement) to the effect that such placement is in the best interests of the child.

### (f) "Voluntary placement" and "voluntary placement agreement" defined

For the purposes of this part and part B of this subchapter, (1) the term "voluntary placement" means an out-of-home placement of a minor, by or with participation of a State agency, after

terminated or substantially modified programs and continuance in office of Assistant Secretary for Family Support, and provisions relating to termination of entitlement under AFDC program, see section 116 of Pub. L. 104–193, set out as an Effective Date note under section 601 of this title.

### EFFECTIVE DATE OF 1994 AMENDMENT

Amendment by Pub. L. 103–432 effective with respect to fiscal years beginning on or after Apr. 1, 1996, see section 202(e) of Pub. L. 103–432, set out as a note under section 622 of this title.

### EFFECTIVE DATE OF 1987 AMENDMENT

Section 9133(c) of Pub. L. 100–203 provided that: ''The amendments made by this section [amending this section and sections 602, 673, and 675 of this title] shall become effective April 1, 1988.''

### EFFECTIVE DATE OF 1980 AMENDMENT

Section 102(a)(1) of Pub. L. 96–272, as amended by Pub. L. 98–118, §3(a), Oct. 11, 1983, 97 Stat. 803; Pub. L. 98–617, §4(c)(1), Nov. 8, 1984, 98 Stat. 3297; Pub. L. 99–272, title XII, 12305(c)(1), Apr. 7, 1986, 100 Stat. 294; Pub. L. 100–203, title IX, §9131(a)(1), Dec. 22, 1987, 101 Stat. 1330–313, provided that the amendment made by that section is effective with respect to expenditures made after Sept. 30, 1980.

Section 102(c) of Pub. L. 96–272, as amended by Pub. L. 98–118, §3(b), Oct. 11, 1983, 97 Stat. 803; Pub. L. 98–617, §4(c)(2), Nov. 8, 1984, 98 Stat. 3297; Pub. L. 99–272, title XII, §12306(c)(2), Apr. 7, 1986, 100 Stat. 294; Pub. L. 100–203, title IX, §9131(a)(2), Dec. 22, 1987, 101 Stat. 1330–313, provided that: ''The amendments made by subsections (a) and (b) [amending this section and sections 608, 673, and 675 of this title] shall be effective only with respect to expenditures made after September 30, 1979.''

[Section 9131(b) of Pub. L. 100–203 provided that: ''The amendments made by subsection (a) [amending section 102(a)(1), (c), and (e) of Pub. L. 96–272, set out as notes under this section] shall become effective October 1, 1987.'']

### CONSTRUCTION OF 2008 AMENDMENT

For construction of amendment by section 301(a)(2) of Pub. L. 110–351, see section 301(d) of Pub. L. 110–351, set out as a note under section 671 of this title.

### CHILDREN VOLUNTARILY REMOVED FROM HOME OF RELATIVE

Section 102(d)(1) of Pub. L. 96–272 provided that: ''For purposes of section 472 of the Social Security Act [this section], a child who was voluntarily removed from the home of a relative and who had a judicial determination prior to October 1, 1976, to the effect that continuation therein would be contrary to the welfare of such child, shall be deemed to have been so removed as a result of such judicial determination if, and from the date that, a case plan and a review meeting the requirements of section 471(a)(16) of such Act [section 671(a)(16) of this title] have been made with respect to such child and such child is determined to be in need of foster care as a result of such review. In the case of any child described in the preceding sentence, for purposes of section 472(a)(4) of such Act [subsec. (a)(4) of this section], the date of the voluntary removal shall be deemed to be the date on which court proceedings are initiated which led to such removal.''

### ANNUAL REPORT TO CONGRESS OF NUMBER OF CHILDREN PLACED IN FOSTER CARE PURSUANT TO VOLUNTARY PLACEMENT AGREEMENTS

Pub. L. 96–272, title I, §102(e), June 17, 1980, 94 Stat. 515, as amended by Pub. L. 100–203, title IX, §9131(a)(3), Dec. 22, 1987, 101 Stat. 1330–313, which required the Secretary of Health, Education, and Welfare, to submit to Congress a full and complete annual report on the placement of children in foster care pursuant to vol-

untary placement agreements under this section and section 608 of this title, terminated, effective May 15, 2000, pursuant to section 3003 of Pub. L. 104–66, as amended, set out as a note under section 1113 of Title 31, Money and Finance. See, also, item 12 on page 99 of House Document No. 103–7.

### § 673. Adoption and guardianship assistance program

**(a) Agreements with adoptive parents of children with special needs; State payments; qualifying children; amount of payments; changes in circumstances; placement period prior to adoption; nonrecurring adoption expenses**

(1)(A) Each State having a plan approved under this part shall enter into adoption assistance agreements (as defined in section 675(3) of this title) with the adoptive parents of children with special needs.

(B) Under any adoption assistance agreement entered into by a State with parents who adopt a child with special needs, the State—

(i) shall make payments of nonrecurring adoption expenses incurred by or on behalf of such parents in connection with the adoption of such child, directly through the State agency or through another public or nonprofit private agency, in amounts determined under paragraph (3), and

(ii) in any case where the child meets the requirements of paragraph (2), may make adoption assistance payments to such parents, directly through the State agency or through another public or nonprofit private agency, in amounts so determined.

(2)(A) For purposes of paragraph (1)(B)(ii), a child meets the requirements of this paragraph if—

(i) in the case of a child who is not an applicable child for the fiscal year (as defined in subsection (e)), the child—

(I)(aa)(AA) was removed from the home of a relative specified in section 606(a) of this title (as in effect on July 16, 1996) and placed in foster care in accordance with a voluntary placement agreement with respect to which Federal payments are provided under section 674 of this title (or section 603 of this title, as such section was in effect on July 16, 1995), or in accordance with a judicial determination to the effect that continuation in the home would be contrary to the welfare of the child; and

(BB) met the requirements of section 672(a)(3) of this title with respect to the home referred to in subitem (AA) of this item;

(bb) meets all of the requirements of subchapter XVI with respect to eligibility for supplemental security income benefits; or

(cc) is a child whose costs in a foster family home or child-care institution are covered by the foster care maintenance payments being made with respect to the minor parent of the child as provided in section 675(4)(B) of this title; and

(II) has been determined by the State, pursuant to subsection (c)(1) of this section, to be a child with special needs; or

(ii) in the case of a child who is an applicable child for the fiscal year (as so defined), the child—

Information.

This information in this FEE SCHEDULE and NOTICE is the truth, and the whole truth, and I stand by it unless proven otherwise by sworn firsthand affidavit and admissible evidence, so help me God. This lawful paper will be permanent evidence of the truth for any jury.

I, Jeannella Jackson, Pro Se, pursuant to 28 U.S.C. § 1746, under penalty of perjury declare that the foregoing is true and correct.

Dated: Shreveport, Louisiana

May 14, 2021

Jeanella Jackson, Pro Se, without prejudice

Cc: GEORGE HARP

CAP/RENEE COTE

KIMBERLY S. SMITH

JORDAN HUGHES

LASHUNDA PRIM

DAVID MATLOCK

## FIRST JUDICIAL DISTRICT COURT

From: Jeanell: Jackson
2929 Peach St. Apt 106
Shreveport, Louisiana 71107

To: CHIEF JUDGE EUGENE W. BRYSON
501 TEXAS ST.
S'PORT, LA 71101                                                May 19, 2021

I, Jeanell Jackson am writing to inform you JUDGE BRYSON that your
employees at the CADDO JUVENILE COURT have kidnapped my
biological property Jo'Mariea Jackson, Art'Trelle Jackson,Braylen
Jackson, Ma'Riyah Jackson, Markya Jackson,and Jay'Wonn Jackson and
are holding them hostage without jurisdiction or authority over me or
them.
I have informed the CADDO JUVENILE COURT and DEPARTMENT OF
CHILDREN AND FAMILY SERVICES that I do not wish to contract with
them but they refuse to return my biological property to me, they have
held  them hostage for 6 days and if they continue to hold them
hostage there will be a fee of $25,000.00 dollars per day per child if
these agents and agency wish to contract with me I was told that I
could get each individual ein number through this FIRST JUDICIAL
DISTRICT COURT but I prefer to have my biological property returned. I
have enclose attachments that show my parental inalienable rights
have been violated through this court and agency and I hope that this
matter can be resolved by you CHIEF JUDGE EUGENE W. BRYSON AND
my property be returned within 24 hours after receiving this letter.(see
attachments that are included Cease and Desist, Violation of Rights
under the color of law, Termination of anyone that has guardianship
over my property and W-9's)

                                        Sincerely,
                                        Jeanelle Jackson

**NOTICE TO PARENT/LEGAL CUSTODIAN OF CHILDREN PLACED
IN STATE OR OTHER INDIVIDUAL'S CUSTODY BY INSTANTER ORDER**

Parent/Legal Custodian

Name: _Jeanelle Jackson_                    Interest of minor child(ren):

Address: _2920 Peach Street_                _Braylen Jackson_

_Shreveport LA 7107_                       _Artrelle Jackson_

Telephone: _318 200-3193 * 5320051_        _Marca Jackson_

                                           _Moriah Jackson_

On _May 12, 2021_, at _5:10_ (am, pm) an emergency (Instanter) order was issued by

_Juvenile_ Court in the parish of _Caddo_ finding the above-named minor child(ren) in

need of care and placement in the custody of:                _Madiana Jackson_

☒  State of Louisiana through the Department of Social Services or _Mikayla Jackson_

☐                                                            _Wm Jackson_

Based on allegations of _Facial injuries_

_Lack of adequate clothing_

And with the safety plan of: _____

_____

_____

The emergency (Instanter) order was obtained by: _Uram - Judge_

Telephone Number: _Juvenile Courthouse_

( ) A continued custody hearing has been set for _____ at _____ a.m. at _____

Court, parish of _318 226 6751_ in Section _____ located at _____. The hearing will determine
whether the child(ren) named above should continue in the care and custody of the state or be returned home.

(☒) A continued custody hearing has not yet been set but will be held within three (3) days, exclusive of
holidays and weekends, of the date stated above when the child(ren) entered state care and custody unless it is
continued by the court. You may contact your caseworker _Ashanda Irin_ at _318 560 7676_ or the
_Juvenile_ Court at _318 226- 6751_ to find out the date, time and location of the hearing. You will be
notified in writing of the date, time and location of the hearing.

( ) A continued custody hearing has been rescheduled for _____ at _____ a.m.
at _____ Court, parish of _____ In Section _____ located at
_____. The hearing will determine whether the child(ren)
named above should continue in the care and custody of the state or be returned home.

You must attend this hearing so you may be heard by the Court on whether the child(ren) will remain
in the care and custody of the state or other person. You may contact the Louisiana Public Defender Board at
_____ (address); _____ (phone); and/or _____
(e-mail) regarding legal representation. See notice on the back of this form.

I have read and explained the above notice to the parent(s)/legal custodian listed above. I have provided the
parent(s)/legal custodian with information on legal representation through the Louisiana Public Defender Board.

_Brin UUS 3_

Signature of Worker                           _May_

                                              Date

I have received notice of the emergency placement of my child(ren) into state care and custody and my right to
be heard at the above named court within three (3) days of the date my child(ren) was(were) placed into state care. I
have received information regarding legal representation through the Louisiana Public Defender Board.

_____

Signature of parent/legal custodian

                                    Date

# FILED

APR 2 3 2021

NATAYSHA MAYS
DEPUTY CLERK OF COURT
CADDO PARISH

ATTORNEY GENERAL
OPINION 10-0281
CERTIFIED COPY

SEAL OF THE CLERK OF
THE PARISH OF CADDO

STATE OF LOUISIANA

IN THE INTEREST OF

Jo'mariea Jackson (DOB: 09/28/2006)

Art'Trell Jackson (DOB: 05/15/2011)

Braylen Jackson (DOB: 08/15/2015)

Mariah Jackson (DOB: 01/12/2019)

Makiya Jackson (DOB: 02/14/2020)

J'won Jackson (DOB: 03/16/2021)

DOCKET NUMBER 16 0531

JUVENILE COURT

CADDO PARISH, LOUISIANA

## MOTION FOR COURT ORDERED FAMILY SERVICES
### and/or PROTECTIVE ORDERS

Now into court through undersigned counsel comes, the Department of Children and

Family Services who with respect shows:

### (1)

On or about March 16, 2021 the agency received a report concerning the above children

alleging physical abuse.  An investigation was initiated concerning the family.  DCFS has

extensive history with the mother Jeanelle Jackson dating back to 2007.  Jo'Mariea, Art'Telle,

Braylen and Maria were previously adjudicated CINC on/about May 6, 2019.  Jo'mariea exited

the custody of DCFS on or about December 19, 2019.  Art'Telle, Braylen and Makiya remained

in the custody of DCFS until May 21, 2020.  The minor children Makiya  and J'kwon have never

been in the custody of DCFS.  J'Kwon was born after the most recent report was received.

### (2)

In the course of the investigation and after a CARA exam, it was discovered that

Jo'Mariea, Art'Telle and Braylen  had  multiple linear bruises and  scabbed scabbed lacerations

These marks are consistent consistent with being "switched". Loop marks were found on some

of the children and all boys reported being switched or "whooped". Dr. Rodriguez indicated that

all marks were consistent with "non-accidental trauma".

ATTORNEY GENERAL
OPINION 10-0281
CERTIFIED COPY

SEAL OF THE CLERK OF
THE PARISH OF CADDO

of the children and that they return wearing it for multiple days.    It was reported as recently as April 19th that Braylen's odor was so horrible staff and other children complained. The order was alleged to be apparent even through masking needed for Covid.  The issue of hygiene and cleanliness has been discussed with the mother but it is never addressed satisfactorily.

(4)

DCFS also discovered that supportive therapies and services implemented for the children that had previously been in foster care had been discontinued.  Of particular concern is speech therapy for Braylen and mental health for Jo'Mariea.

(5)

Due to prior involvement with the Family, DCFS is aware that the children's mother suffers from mental health issues. DCFS is concerned that given her recent pregnancies, Ms. Jackson is not receiving appropriate mental health medications or monitoring.  In addition, Ms. Jackson never completed substance abuse treatment and was discharged from Family Preservation court after a significant period of non-compliance.

(6)

In an effort to stabilize the family and maintain the children in the home, Ms. Jackson was asked to voluntarily work with Family Services.  The discussed Family Services were:

obtain Early Steps Services for all of her children under 3, resume working with Social Work Professionals and maintain all counseling and medications recommended, forego any corporal punishment of the children,  schedule an appointment with Social Work Professionals for a Jo'mariea's mental health assessment and comply with all recommended treatments,  Schedule an appointment with primary doctor to discuss  Jo'mariea's enuresis, participate in parenting classes, notify law enforcement if children run away, reinstate needed speech or other recommended therapies for all children, submit to random drug screens, obtain a substance abuse evaluation and comply with all requests, allow DCFS to monitor the home and children, participate fully with Family Services Unit

ATTORNEY GENERAL
OPINION 10-0281
CERTIFIED COPY

SEAL OF THE CLERK OF
THE PARISH OF CADDO

of the minor children and desires that this court enter an order consistent with paragraph (6) above compelling Jeanelle Jackson to participate in Family Services.

WHEREFORE PETITIONER PRAYS THAT after due proceedings herein, the court modify the previous of disposition of the court and compel Jeanelle Jackson to participate in a Family Service Plan approved and ordered by the court, and for all other relief that is just and equitable under the circumstances

**RESPECTFULLY SUBMITTED**:

/e-signed/ *KIMBERLY S. SMITH*
Kimberly S. Smith- La. Bar no. 20002
Attorney for State of Louisiana- DCFS
1525 Fairfield Avenue, 8th Floor
Shreveport, Louisiana 71101-4388
Phone: (318) 676-7347  Fax: (318) 676-7084

ATTORNEY GENERAL
OPINION 10-0281
CERTIFIED COPY

**STATE OF LOUISIANA**

**IN THE INTEREST OF**

Jo'mariea Jackson (DOB: XXXXXXXXXXXXX

Art'Trell Jackson (DOB: XXXXXXXXXXXX

Braylen Jackson (DOB: XXXXXXXXXXXX

Mariah Jackson (DOB: XXXXXXXXXXXX

Makiya Jackson (DOB: XXXXXXXXXXXX

J'won Jackson (DOB: XXXXXXXXXXXX

**DOCKET NO.**_____

**JUVENILE COURT**

**CADDO PARISH, LOUISIANA**

SEAL OF THE CLERK OF
THE PARISH OF CADDO

<u>**ORDER**</u>

Considering the foregoing motion,

IT IS HEREBY ORDERED THAT:

(1)   **IDB/George   Harp   is   appointed   to   represent   the   mother.**

(2)____PDO_____ **is appointed to represent the interests of the father,**

**Mark Jackson and as curator for the fathers Henry Bradford and Arthur Grundy.**

(3) **CAP/Renee Cote is appointed to represent the minor children.**

IT IS FURTHER ORDERED THAT IT IS ORDERED THAT Jeanelle Jackson,

Mark Jackson, Henry Bradford and Arthur Grundy appear and show cause if any she can,

why the requested Family Services/Protective Orders should not be entered on on MAY

___12ᵗʰ___, 2021 at ___1:30___. All parties and counsel shall appear on

that date and time.

READ,   RENDERED   AND   SIGNED   THIS   ___3ʳᵈ___   day   of

___May___ 2021 in Shreveport, Louisiana.

_____
**JUVENILE COURT JUDGE**

ATTORNEY GENERAL
OPINION 10-0281
CERTIFIED COPY

STATE OF LOUISIANA
UNION · JUSTICE · CONFIDENCE

SEAL OF THE CLERK OF
THE PARISH OF CADDO

**GEORGE HARP/IDB- attorney for Jeanelle Jackson**
400 Travis Street- suite 1801
Shreveport, LA

**Attorney and Curator appointed for Mark Jackson, Arthur Grundy, and Henry Bradford**

**CAP/RENEE COTE**
Attorney for the minor children
1525 Fairfield- Rm. 531-536 (Mental Health Advocacy)
Shreveport, LA  71104

**KIMBERLY S. SMITH**
1525 Fairfield Avenue-8th floor
Shreveport, LA 71101

**JORDAN HUGHES**
1525 Fairfield Avenue-4th floor
Shreveport, LA 71101

**LASHUNDA PRIM**
1525 Fairfield Avenue-4th floor
Shreveport, LA 71101